# IN THE COURT OF APPEALS OF IOWA

No. 21-0509
Filed July 21, 2021

IN THE INTEREST OF A.J., A.J., and A.J.,
Minor Children,

T.C., Mother,
      Appellant,

J.F., Father,
      Appellant.
_____

Appeal from the Iowa District Court for Linn County, Carrie K. Bryner, District Associate Judge.

A mother and father separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Deborah M. Skelton, Walford, for appellant mother.

Amber Foley of the Office of the State Public Defender, Cedar Rapids, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Jessica L. Wiebrand, Cedar Rapids, attorney and guardian ad litem for minor children.

Considered by Bower, C.J., and Doyle and Ahlers, JJ.

**BOWER, Chief Judge.**

A mother and father separately appeal the termination of their parental rights.  We affirm on both appeals.

T.C. is the mother of children born in 2007, 2008, and 2013, each with the initials A.J.[1]  J.F. is the biological father of the oldest of the three children.[2]  S.J. is the legal father of all three children, and the biological father of the younger two.  S.J.'s parental rights with respect to all three children were terminated, and he has not appealed.

On September 3, 2019, a hotel notified law enforcement three children had been left alone overnight.[3]  The children informed the officers they were often left alone all night, they had no way to contact their mother, and they were not enrolled in school.  About twenty minutes after the officers arrived, the mother returned to the hotel.  The mother admitted to methamphetamine use earlier that day and officers found drug paraphernalia in her vehicle and the hotel room.  J.F. and S.J. could not be reached at that time.  Law enforcement took the children into their care, and the children were officially removed from the parents' custody on September 4.[4]  The children were placed with relatives and later moved to a long-

---

[1] The mother also has two older children who were not in her care and are not part of this action.

[2] As the father appealing the termination of his rights, we will also refer to J.F. as "the father."

[3] The children were already involved in assessments by the department of human services (DHS) for allegations of abuse arising from two instances: in one, the mother let her children be driven by her intoxicated boyfriend resulting in a car accident; in the other, she left the children with a relative who locked them in a room.

[4] Drug tests of two of the children at the time of removal came back positive for ingestion of methamphetamine.

term placement with S.J.'s mother. On September 11, the children were adjudicated children in need of assistance (CINA).

The family has been involved with DHS to varying degrees for twenty years.[5] The mother and S.J. were investigated by DHS several times for allegations of poor supervision and neglect, though many assessments were not confirmed. The oldest child was part of a five-year CINA proceeding from birth until January 2012. DHS learned the mother had a CINA proceeding in Illinois several years ago which included removal of the children.

The mother's participation in services during this case has been inconsistent. She attended less than half the visits offered, did not consistently use parenting skills, and did not interact much with the children. She was homeless at the beginning of the CINA proceedings and later would not say where she lived. She has not been employed throughout the case but has some social security income. The mother completed outpatient substance-abuse treatment but did not consistently appear at drug testing appointments and occasionally tested positive for drugs.

J.F. has had sporadic contact with the oldest A.J. over the child's life. In 2010, he had custody of the child for a short time during the child's first CINA proceeding, but he returned the child to the mother's care as he went through a divorce. He then did not see the child for four years, and for the past several years has only seen the child a few times a year. He has never paid child support or provided other financial support. The father has a 2018 drug conviction and has

---

[5] The mother had significant DHS involvement with her older children.

not tested consistently during this case; the nearest drug testing facility is the next county over, and he claims he has not had reliable transportation. He is employed and lives in suitable housing. The father moved in the summer 2020 in an effort to be closer to the child but stayed in place when his child's placement moved to a different town over an hour away.

For the first several months, the father communicated with the child through cards and letters to slowly engage in a relationship. They had their first in-person visit in June 2020. The visits were fully supervised and occurred once a week. The child is reported to have enjoyed the visits with J.F., but the father does not plan meals or activities for the visits. The father has been trying hard to improve, but some of his struggles with employment and transportation have been self-inflicted and raise concerns of his ability to provide a safe and stable home for the child.

On April 2, 2021, the court terminated the parental rights of both the mother and J.F. under Iowa Code section 232.116(1)(f) (2020).[6] The mother and J.F. separately appeal.

---

[6] The court may terminate parental rights under section 232.116(1)(f) if it finds:
    (1) The child is four years of age or older.
    (2) The child has been adjudicated a [CINA] pursuant to section 232.96.
    (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
    (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

We review termination-of-parental-rights proceedings de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). We give weight to the findings of the juvenile court but are not bound by them. Iowa R. App. P. 6.904(3)(g).

*The mother's appeal.* The mother claims the court should not have terminated her rights. She asserts the children could have been returned to her care and termination is not in the children's best interests.

The mother concedes the first three elements of Iowa Code section 232.116(1)(f) were established, but contests the final element, asserting the evidence fails to show the children could not be returned to her care at the time of the hearing. The mother states she was "complying" with services and "making progress." At the time of the hearing, the mother's residence was not known, and she was unemployed. The mother had been very inconsistent with attending visits, engaging with the children, or otherwise showing a willingness and ability to parent the children in a reliable and responsible way. Clear and convincing evidence establishes the children could not be returned to her care at the time of the termination hearing.

The mother makes a minimal argument in the alternative, the children could have been returned to her care with an extension of time to work toward reunification. To grant an extension of time, the court must be able to "enumerate the specific factors, conditions, or expected behavioral changes" providing a basis to determine the children will be able to return to the parent at the end of the additional six months. Iowa Code § 232.104(2)(b). The mother makes no attempt to identify any of the factors leading to the children's removal which would be remedied by an extension of time. "Children simply cannot wait for responsible

parenting. . . . [Parenting] must be constant, responsible, and reliable." *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990). An extension is not warranted.

Finally, the mother claims termination of her rights is not in the children's best interests and the court should apply an exception under Iowa Code section 232.116(3)(c), finding termination would be detrimental due to the closeness of the parent-child bonds. "The factors weighing against termination in section 232.116(3) are permissive, not mandatory, and the court may use its discretion, based on the unique circumstances of each case and the best interests of the child[ren], whether to apply the factors in this section to save the parent-child relationship." *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (altered for readability). We look for the best placement for the children's long-term nurturing and growth and the physical, mental, and emotional needs of the children. Iowa Code § 232.116(2); *A.M.*, 843 N.W.2d at 112.

The record before us fails to show the mother prioritized the children's best interests either through efforts to establish a safe home or in her interactions with the children. These children have had a tumultuous life and deserve a safe and stable home with an adult they can rely on as a parent. They have this with their relative placement, and the mother has not shown she can provide a permanent home. We find termination of the mother's parental rights is in the children's best interests.

*The father's appeal.* J.F. does not contest grounds for termination exist. Rather, he contends reasonable efforts have not been made to reunify him with his child. He also claims the juvenile court erred in not ordering a six-month extension for him to work toward reunification.

The father identifies a lack of accessible drug testing as a failure by the State to make reasonable efforts toward reunification. "The reasonable efforts concept covers efforts to prevent and eliminate the need for removal and to deliver reunification services while providing adequate protection for the child." *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019). In evaluating claims DHS failed to provide reasonable efforts, we consider "the services provided by the state and the response by [the parent], not on services [the parent] now claims the DHS failed to provide." *In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000). The father refused testing for the first nine months of these proceedings. In June 2020, the father moved from Linn County to Iowa County and, at the father's request, the State moved the father's drug testing to the nearest testing location. The father's new home was approximately a thirty-minute drive from the nearest testing location, but he claims he did not have reliable transportation to get to the site. The father did not request any other actions to facilitate his drug testing.[7]  Under these circumstances, the State's efforts were reasonable.

J.F. contends his progress toward stability and parenting skills merit a six-month extension in his reunification efforts. Looking at the whole record, we disagree. J.F. had little to no contact with the child for a period of nine years, provided no support, and does not appear to have sought any information about the child's living situation during those years despite knowing about the mother's volatile relationships and lack of a stable home. Once the most recent juvenile

---

[7] In-home drug testing was suggested at the termination hearing, but it is not clear from the record that the State has the capability to do supervised in-home testing in the father's area.

proceedings started, the father sent the child a few cards and letters as requested by DHS, but again took no steps to seek out information about the child's physical, mental, or emotional condition or needs from schools, medical professionals, DHS, or the family placements. While we appreciate the child's need to progress slowly with in-person visits, the father showed no sense of urgency in developing any parenting skills outside the visits and only a limited ability to apply parenting advice during the visits.

"[W]e look to the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future." *In re J.H.*, 952 N.W.2d 157, 171 (Iowa 2020) (citation omitted). "While we recognize the law requires a 'full measure of patience with troubled parents who attempt to remedy a lack of parenting skills,' Iowa has built this patience into the statutory scheme of Iowa Code chapter 232." *C.B.*, 611 N.W.2d at 494 (citation omitted). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010).

This child has waited for years for either parent to step up and provide a safe and stable home. The father has had thirteen years to establish a parent-child relationship but has not made an effort to do so. Most recently, he had nine months before visits started to show stability and progress but decided to wait for visits to start before taking responsibility. We cannot conclude the need for removal will no longer exist at the end of six months, and therefore an extension

is not warranted.  *See* Iowa Code § 232.104(2)(b).  We affirm the termination of the father's parental rights.

**AFFIRMED ON BOTH APPEALS.**